IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| ROSIE MUSHATT, Individually and on behalf of all heirs-at-law and wrongful death beneficiaries of Mario Whitley, Deceased, and ESTATE OF MARIO WHITLEY | PLAINTIFFS |
| v. | CAUSE NO. 1:25CV202-LG-RPM |
| CITY OF PASCAGOULA, MISSISSIPPI; CHIEF TERRY SCOTT, in his Official Capacity; and OFFICER JOHN DOES 1-5, in his/her individual and official capacity | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT AND FOR QUALIFIED IMMUNITY**

Rosie Mushatt, individually and on behalf of the heirs-at-law and wrongful death beneficiaries of Mario Whitley, and the Estate of Mario Whitley filed this Section 1983 lawsuit against the City of Pascagoula, Mississippi, Police Chief Terry Scott in his official capacity, and "Officer John Does 1–5, in his/her individual and official capacity."[1]  Compl. [1] at 1.  Defendants filed this [7] Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  The parties have fully briefed the Motion.  After considering the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Defendants' Motion should be granted.

---

[1] Plaintiffs name five John Doe officers in the style of their case, but they only mention one John Doe officer in the body of the Complaint.  The Court will refer to this officer as "Officer Doe."

## BACKGROUND

In their Complaint, Plaintiffs allege:

> On or about July 7, 2024, as Mario Whitley operated his vehicle, he began to experience a mental and physical health crisis, and crashed his vehicle into [a] ditch near the local Burger King, in Pascagoula, Mississippi. Subsequent to the crash, Mr. Whitley began to run on foot towards the local hospital. As Mr. Whitley ran towards the hospital, Defendant Officer Doe stopped Whitley, placed him under arrest, and put him in the back of his/her police car. Instead of immediately transporting Mr. Whitley to the hospital, Defendant Officer Doe drove Mario Whitley to the Pascagoula Police Department. Mario Whitley collapsed and subsequently passed away outside of the Pascagoula Police Department. As a result, Mario Whitley's body was taken directly to the morgue without any medical treatment or evaluation. As a result, Plaintiffs suffered and continue to suffer mental and emotional trauma.

*Id.* at 3. They further claim that Whitley was in a "visibly infirmed mental state" when Officer Doe arrested him and transported him to the police department. *Id.* at 5. They attempt to assert the following claims: (1) reckless disregard for the safety of Whitley in violation of the Mississippi Tort Claims Act and the Mississippi Vulnerable Adults Act; (2) violation of Whitley's Fourth Amendment right to be free from unreasonable seizure; (3) violation of Whitley's Fourteenth Amendment right to substantive due process; (4) municipal liability; (5) violation of Whitley's right to Equal Protection; (6) wrongful death, (7) general negligence; (8) "[n]egligent, [g]ross [n]egligent, and [w]anton [f]ailure in" hiring, monitoring, training, and supervising the officers involved; (9) intentional and/or negligent infliction of emotional distress; and (10) deliberate indifference and/or denial/delay of access to medical care. *Id.* at 4–10. Plaintiffs filed the municipal liability claim and negligent hiring/monitoring/

training/supervision claim against the City and Chief Scott.  The other claims appear to have been filed against all Defendants.

In their Motion to Dismiss, Defendants claim that (1) Plaintiffs cannot establish municipal liability on the part of the City; (2) the official-capacity claims against Chief Scott and Officer Doe should be dismissed as duplicative; (3) Chief Scott and Officer Doe are entitled to qualified immunity; (4) the Mississippi Tort Claims Act provides immunity to all Defendants; and (5) the Complaint is a shotgun pleading that does not meet federal pleading standards.

## DISCUSSION

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim that is plausible on its face."  *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 783–84 (5th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering a motion to dismiss under Rule 12(b)(6), a court "accept[s] all well-

pleaded facts as true and review[s] them in the light most favorable to the plaintiff." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010).

## I.    OFFICIAL CAPACITY CLAIMS

Plaintiffs have filed official-capacity claims against Chief Scott and Officer Doe. Official-capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Rayborn*, 881 F.3d at 417. When a plaintiff has sued a governmental entity and its employees in their official capacities, the official-capacity claims are appropriately dismissed as duplicative. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Thus, Plaintiffs have failed to state official-capacity claims against Chief Scott and Officer Doe.

## II.    MUNICIPAL LIABILITY

Plaintiffs claim the City "failed to enforce and follow policies" related to hiring, training, and supervision of officers, which resulted in violations of Whitley's Constitutional rights. Compl. [1] at 7. They cite "the nationally recognized minimal acceptable standards of competency" and "the Minimum Standards of Operation for Mississippi Law Enforcement Officers." *Id.*

Municipalities are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). They can only be held liable under § 1983 if the municipality "itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Id.* (citation modified) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Thus, a municipality can only be held liable for acts that it "has officially sanctioned or ordered." *Edwards v. City of*

*Balch Springs, Tex.*, 70 F.4th 302, 308 (5th Cir. 2023). For this reason, a plaintiff must prove the following elements to establish municipal liability: "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 416–17 (5th Cir. 2018). A plaintiff can satisfy the official policy element in one of three ways:

> First, a plaintiff can show written policy statements, ordinances, or regulations. Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Third, even a single decision may constitute municipal policy . . . when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim.

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citation modified). A custom qualifies as an official policy when it is

> a persistent, widespread practice of City officials or employees, which . . . is so common and well-settled as to constitute a custom that fairly represents municipal policy. Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined.

*Id.* "Isolated unconstitutional actions by municipal employees will almost never trigger liability." *Rayborn*, 881 F.3d at 416–17 (citation modified). The standard applicable to a failure-to-train claim is the same as the standard for municipal liability. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

To avoid dismissal under Rule 12(b)(6), a plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d

613, 622 (5th Cir. 2018). A plaintiff must do more than describe the incident that gave rise to his injury. *Id.* at 622. For claims related to hiring, "the connection between the background of the individual and the specific violation alleged must be strong, as the plaintiff must show that the hired officer was highly likely to inflict the particular type of injury he suffered." *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021) (citation modified).

In their Complaint, Plaintiffs do not describe any policy, custom, or specific decision made by a policymaker; they merely provide a vague, generalized description of Officer Doe's alleged interaction with Whitley. Their Response Memorandum provides very little additional detail. Plaintiffs assert, "The custom of immediately detaining and arresting individuals who display immediate need for medical assistance is both deliberately indifferent and reckless disregard to the individual's safety on the part of the police official." Pls.' Mem. [10] at 3. In addition, Plaintiffs have not provided any facts supporting their allegations related to hiring, training, and supervision. As a result, they have failed to state a municipal liability claim against the City.

## III. INDIVIDUAL CAPACITY CLAIMS/QUALIFIED IMMUNITY

Defendants argue that Chief Scott and Officer Doe are entitled to qualified immunity, which "shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir.

2020).  When considering a motion to dismiss based on qualified immunity, "the crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and would overcome their qualified immunity defense."  *Green v. Thomas*, 129 F.4th 877, 883 (5th Cir. 2025) (citation modified).  The plaintiff bears the burden of refuting qualified immunity.  *Id.*

## A.  CHIEF TERRY SCOTT

Plaintiffs sued Chief Scott in his official capacity, but they did not attempt to assert an individual capacity claim against Chief Scott in their Complaint.  As a result, there should be no need to address Defendants' qualified immunity arguments concerning Chief Scott.  *See Stallworth v. Slaughter*, 436 F. App'x 337, 340 (5th Cir. 2011) ("[T]he personal defense of qualified immunity does not apply to official-capacity claims.").  However, in Plaintiffs' Response Memorandum they argue that Chief Scott is not entitled to qualified immunity, and they claim they pled sufficient facts "to demonstrate personal involvement of Chief Scott."  Pls.' Mem. [10] at 4.  Because "courts may not simply rely on the characterization of the parties in the complaint," the Court will consider whether Plaintiffs have stated sufficient facts to state an individual-capacity claim against Chief Scott.  *See Lewis v. Clarke*, 581 U.S. 155, 162 (2014).

First, supervisors are not vicariously liable for the actions of others under § 1983.  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).  Thus, "[a] plaintiff must establish that the defendant was either personally involved in the

deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citation modified). "Personal involvement of supervising personnel generally includes giving a command, signal, or any other form of direction to the officers that prompted the detention or arrest." *Turner v. Lieutenant Driver*, 848 F.3d 678, 696 (5th Cir. 2017) (citation modified). Plaintiffs have not alleged that Chief Scott was present when Whitley was arrested, transported, or died, and they have not alleged that he ordered Officer Doe to arrest or transport Whitley to the police station. Therefore, even if Plaintiffs intended to state an individual capacity claim against Chief Scott, they have failed to state a claim upon which relief can be granted.

### B.   OFFICER DOE

To overcome an officer's qualified immunity defense, a plaintiff "must allege facts showing that the officer[ ] (1) violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (citation modified). "[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir. 2020) (citation modified). The Court has discerned two § 1983 claims against Officer Doe from the allegations in Plaintiffs' Complaint—a wrongful seizure claim and a denial of medical care claim. As explained infra, the Court finds that Plaintiffs have not overcome Officer Doe's

qualified immunity defense because they have not stated facts supporting their claims that Officer Doe violated Whitley's constitutional rights.

### 1. Wrongful Seizure

In support of their wrongful seizure claim, Plaintiffs allege, "Whitley had a clearly established constitutional right to be free from unreasonable seizure and transport of his body without probable cause to take him to the jail, instead of to a hospital for medical assistance. . . ." Compl. [1] at 5.

The Fourth Amendment of the Constitution provides in relevant part, "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . but upon probable cause." U.S. Const. amend. IV. As such, "the right not to be arrested absent probable cause" is clearly established. *Green v. Thomas*, 129 F.4th 877, 884 (5th Cir. 2025). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 238 (5th Cir. 2025). "Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed an offense." *Id.* at 886–87. "Actual probable cause is not necessary; merely arguable probable cause is sufficient to trigger qualified immunity." *Petersen v. Johnson*, 57 F.4th 225, 232 (5th Cir. 2023).

Defendants argue that Officer Doe had probable cause to arrest Whitley because, according to Plaintiffs' allegations, Whitley had fled the scene of an

accident.  A Mississippi statute provides:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of Section 63-3-405.  Every such stop shall be made without obstructing traffic more than is necessary.
>
> Any person failing to stop or comply with said requirements under such circumstances shall be guilty of a misdemeanor.

Miss. Code Ann. § 63-3-403.  A similar statute applies to accidents resulting in injury or death.  *See* Miss. Code. Ann. § 63-3-401(1).

An officer who personally witnesses a crime has probable cause for a warrantless arrest under Mississippi law.  Miss. Code Ann. § 99–3–7(1).  Furthermore, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  As a result, Plaintiffs' allegation that Officer Doe arrested Whitley while he was leaving the scene of an accident does not constitute a plausible Fourth Amendment claim.

### 2. Denial of Medical Care

Plaintiffs cite Officer Doe's denial of medical care as grounds for claims under the Fourth Amendment, the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  As a result, the Court must determine which constitutional amendment governs an arrestee's claim for denial of medical care.

"The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees." *Baughman v. Hickman*, 935 F.3d 302, 306–07 (5th Cir. 2019). Thus, the Fourteenth Amendment governs denial of medical care claims made by pretrial detainees. *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020). The Fifth Circuit has also applied the Fourteenth Amendment to an officer's denial of medical care to an arrestee. *See Allen v. Hays*, 65 F.4th 736, 747 (5th Cir. 2023).[2] As a result, Plaintiffs mischaracterized their denial of medical care claim when they cited the Fourth Amendment, the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. In addition, Plaintiffs have not stated an Equal Protection Claim because they have not alleged that Whitley was treated differently from persons similarly situated. *See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008).

In light of this determination, it is only necessary to determine whether Officer Doe denied Whitley medical care in violation of the Due Process Clause of

---

[2] Some courts apply the Fourth Amendment "objectively reasonable" standard to medical care claims brought by arrestees who have not yet had a probable cause hearing. *See Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) (collecting cases). These courts consider four factors when determining whether an officer's response to an arrestee's medical needs was objectively unreasonable: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Here, the Court finds that Plaintiffs have failed to state a claim even if the Fourth Amendment applies, particularly since the objective reasonableness test is "an easier standard for the plaintiff to meet" than the deliberate indifference test. *See Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001).

the Fourteenth Amendment. This Clause is violated "if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." *Allen*, 65 F.4th at 747. Deliberate indifference is "an extremely high standard"; Plaintiffs are generally required to show that defendants "were [1] aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn and [2] that they actually drew the inference." *Id.* An allegation that the defendant was aware of a potential risk of serious harm is not sufficient. *Carmona v. City of Brownsville*, 126 F.4th 1091, 1097 (5th Cir. 2025).

In an attempt to state a substantive due process claim, Plaintiffs state:

> The Defendants failed to provide Mario Whitley with due process . . . under the law when Defendant Officer Doe intentionally exposed the decedent to known and foreseeable danger and thus deprived Mario Whitley of liberty and life. . . . The Defendants' intentional acts with regard to Mario Whitley's visibly infirmed mental state were at all times an unreasonable violation of Mario Whitley's clearly established rights under the Fourteenth (14th) Amendment. . . . Defendants' intentional and deliberate indifference to Mario Whitley's life placed him in the dangerous situation that resulted in Whitley's demise.

Compl. [1] at 6. Defendants counter, "Plaintiffs' allegations describe an individual who was ambulatory, alert, and running under his own power, all facts that cut against an inference that officers subjectively recognized a substantial risk of imminent harm." Defs.' Mem. [8] at 7–8.

Plaintiffs alleged that Whitley was in a visibly infirm *mental* state, but they have not alleged any facts that could lead Officer Doe to conclude that Whitley was *physically* ill, injured, or near death. For example, Plaintiffs do not describe any symptoms Whitley may have displayed or statements he may have made to Officer

Doe. In fact, Plaintiffs have not provided Whitley's cause of death or alleged that Officer Doe knew Whitley was running to the hospital at the time of arrest. Plaintiffs have failed to demonstrate willful indifference and have therefore not stated a plausible claim for denial of medical care under the Fourteenth Amendment Due Process Clause.

## IV.   STATE LAW CLAIMS

Having determined that Plaintiffs' federal claims should be dismissed, no federal question remains. Furthermore, the Court does not have diversity jurisdiction because diversity of citizenship is lacking. As such, the Court must decide whether to exercise supplemental jurisdiction over the state law claims.[3] *See Drake v. Costume Armour, Inc.*, 736 F. App'x 505, 506 (5th Cir. 2018) (holding that district court should have decided whether it would exercise supplemental jurisdiction over state law claims after dismissing federal claims pursuant to Rule 12(b)(6)).

District courts have supplemental jurisdiction over state law claims that arose out of "the same case or controversy" as a plaintiff's federal law claims. 28 U.S.C. § 1367(a). However, district courts have discretion to decline to exercise supplemental jurisdiction over pendent state law claims. 28 U.S.C. § 1367(c).

---

[3] "Ordinarily, a district court should provide a plaintiff with the opportunity to cure [a] defect in his complaint." *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). However, where, as here, plaintiffs file a response asserting that the complaint was sufficient instead of filing a motion to amend the complaint, a district court is not required to give them an opportunity to seek leave to amend. *See id.* Furthermore, the statute of limitations has not run on Plaintiffs' federal claims, so they can file a new lawsuit if they later decide they can assert sufficient facts to state a claim.

When determining whether to decline jurisdiction, courts must "consider and balance" the statutory factors listed in 28 U.S.C. § 1367(c), as well as the common law factors of judicial economy, convenience, fairness, and comity. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). The statutory factors are:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

Here, the statutory factors are satisfied because the Court has dismissed all of Plaintiffs' federal claims. As for the common law factors, it will not be unfair for the Court to decline jurisdiction because the statute of limitations has been tolled while this case has been pending in federal court. *See* 28 U.S.C. § 1367(d). The comity factor favors dismissal because it will be more appropriate for a state court to resolve the question of whether Defendants are entitled to immunity under the Mississippi Tort Claims Act. *See Parker*, 972 F.2d at 590 n.12 ("[T]he interests of comity and federalism are better served when federal courts avoid unnecessary determinations of state law."). Moreover, this lawsuit is in its early stages, and the Court has not expended any resources evaluating Plaintiffs' state law claims. As a result, the statutory and common law factors weigh in favor of declining to exercise

supplemental jurisdiction over Plaintiffs' claims.  Plaintiffs' state law claims are dismissed without prejudice pursuant to § 1367.

## CONCLUSION

For the above reasons, Plaintiffs have not stated any plausible federal claims in this lawsuit, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendants' [7] Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is **GRANTED**.  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.  The Court will enter a separate judgment as required by Fed. R. Civ. P. 58(a).

**SO ORDERED AND ADJUDGED** this the 25th day of January, 2026.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE